UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


CIVIL ACTION NO. 3:11-CV-00403-H


SHANA PERRY, *et al.*                                                    PLAINTIFFS

V.

AUTOZONERS, LLC, *et al.*                                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiffs Shana Perry, Daryl Quiney, and Damon Harper brought suit against their former employer, Defendant AutoZoners, LLC[1] ("Autozone"), for a number of alleged injuries arising from the interaction between Plaintiffs and their supervisors.  Perry brought five counts individually, and Quiney and Harper together brought two counts.  Autozone has filed two motions for summary judgment.  Presently before the Court is Autozone's motion for summary judgment as to the claims brought by Quiney and Harper for racial discrimination and retaliation. The Court will consider Perry's claims in a later memorandum.

The Court has considered the lengthy briefs filed in support and opposition of this motion.  The circumstances of these claims and the unusual nature of them make for a complicated analysis.  For the reasons the follow, the Court will grant the motion in part and deny the motion in part.

---

[1]    Plaintiffs initially sued Dawn Brandenburg and Donnie Helstern in their individual capacities.  The Court dismissed the individual Defendants pursuant to court order on April 29, 2013, following a status conference. Plaintiffs also sued the following corporate parties: AutoZone Stores, Inc., AutoZone Development Corp., AutoZone Texas, L.P., AutoZoners, LLC, and AutoZone, Inc.  These remaining corporate Defendants argue that only AutoZoners, LLC has employees, and is thus the only entity potentially liable for the wrongs alleged here.  During the status conference, Plaintiffs' counsel indicated that she would be amenable to dismissing the other Defendants if provided proof that AutoZoners, LLC was the corporate entity employing the actors at issue in the present litigation. The Court expected, and has yet to receive, a stipulation to this end.

In Plaintiffs' response to the motion for summary judgment presently before the Court, Plaintiffs agree to dismiss AutoZone Development Corp. and AutoZone Texas, L.P.  Moreover, upon the stated guarantee of Defendants that only AutoZoners, LLC employs the relevant actors and only AutoZoners, LLC will compensate Plaintiffs for any injuries proven, the Court will further dismiss AutoZone Stores, Inc. and Autozone, Inc.  Accordingly, the only Defendant remaining is AutoZoners, LLC.

I.

The general timeline of events is undisputed.  Perry, a Commercial Sales Manager, worked at Autozone Store No. 612 on Broadway in Louisville, Kentucky (the "Broadway Store").  Mark DeHaan, the Store Manager at the Broadway Store in the summer of 2010, allegedly engaged in persistent and frequent sexual harassment of Perry between June 14, 2010 and July 23, 2010.  That day, Perry called  Dawn Brandenburg, the Regional Human Resources Manager in charge of the Broadway Store, to set up a meeting, which took place the following Monday on July 26, 2010.  During the meeting, Perry disclosed the nature of DeHaan's conduct towards her over the past weeks.  During her subsequent investigation into DeHaan's behavior (the "Investigation"), Brandenburg interviewed Quiney and Harper as witnesses of the alleged inappropriate and unwelcome sexual advances.  According to Autozone, it then fired Quiney and Harper due to statements elicited during the Investigation that indicated they witnessed and failed to report DeHaan's harassment of Perry, in violation of company policy.   Autozone terminated Quiney on August 10, 2010 and Harper the following day.

The facts particular to Quiney are as follows: Autozone hired Quiney, an African-American, in December of 2007.  He served as Assistant Manager at several stores in Louisville, Kentucky, and even as a temporary store manager at one location, before Autozone transferred him to the Broadway Store.  Autozone does not contest Plaintiffs' characterization of the Broadway Store as experiencing an inordinate amount of theft due to its location in a neighborhood fraught with a high crime rate.  Quiney contends that Autozone transferred him to the Broadway Store because "he was a good fit for the customers" in an area populated by an African-American majority.  Around the time of his transfer to the Broadway Store, then Store Manager Tim Hedley, Caucasian, allegedly told Quiney that District Manager Donnie Helstern,

2

also Caucasian, would never hire an African-American store manager.  Quiney worked as the Assistant Store Manager at the Broadway Store until his termination.

During Quiney's employment, Autozone promoted Hedley out of the store manager position at the Broadway Store and replaced him with DeHaan, who is half African-American and half Caucasian.  Quiney once approached DeHaan to warn him to watch his behavior towards Perry.  That same week, Autozone placed Quiney on a performance improvement plan called a Corrective Action Review ("CAR"), requiring a 30-day performance review that would result in a reduction in pay and responsibility if his work performance did not improve.

The facts particular to Harper are as follows: Autozone hired Harper, an African-American, in July of 2008.  He worked as an Assistant Manager prior to his transfer to the Broadway Store, and held that title temporarily upon arrival at the Broadway Store.  Autozone employees also told Harper that he was a "good fit" for the location, which Harper took to mean that Autozone transferred him there because he related to the predominantly African-American customer base.  When Helstern took over as District Manager, Helstern and Autozone determined that the Broadway Store did not need two assistant managers. Autozone changed Harper's title and job responsibilities to that of a Parts Sales Manager, although he did not receive a reduction in pay.  He served as the Broadway Store Parts Sales Manager until his termination.

At some point in July of 2010, Harper complained to Helstern about DeHaan's managerial conduct, divulging that DeHaan often took long lunches and did not return after lunch.  Shortly thereafter, Autozone placed Harper on a CAR with similar work improvement contingencies placed upon Quiney.

Perry reported the extent of DeHaan's sexual harassment against her to Brandenburg on July 26, 2010, naming as witnesses Quiney, Harper, and Grover Jones, another Autozone employee with an unknown position at the Broadway Store. All named witnesses are African-American. Brandenburg interviewed Quiney and Harper in a method Autozone refers to as a Question and Answer. During the interviews with Quiney and Harper, Brandenburg determined that Quiney and Harper both witnessed inappropriate and likely unwelcome sexual advances by DeHaan and failed to report these incidents. Specifically, Quiney witnessed DeHaan swat Perry on the backside. Harper witnessed DeHaan encroaching on Perry's personal space to the point where he appeared as if he was going to kiss her. Harper also saw DeHaan ask Perry to work up front, and as she walked by, look at her backside and smile. Brandenburg sent the Question and Answer responses to her superiors, who recommended the termination of Quiney and Harper. Human Resources sent the recommendation to Regional Manager Jay Campbell, who adopted the recommendation, and with the help of Helstern, communicated the termination notices to Quiney and Harper. Caucasian employees replaced Quiney and Harper at the Broadway Store.

According to Autozone, Quiney and Harper violated a zero tolerance corporate policy for reporting any instances of sexual harassment. During this case and in testimony before the Kentucky Unemployment Commission, Autozone cited various provisions that it claims constitutes this zero tolerance policy: 1) the "Reporting Illegal or Unethical Behavior" policy subsection called "Managers/Supervisors' Obligation for Problem Resolution", 2) the "Reporting Illegal or Unethical Behavior" policy subsection titled "Reporting Non-Compliance", 3) the "Harassment" section in the Store Handbook, 4) a "Problem Solving Procedure" posting that Brandenburg purportedly attached to a flyer sent to some or all stores under her purview, and 5) a "Respect in the Workplace" module that presents specific workplace situations and

4

provides proper responses to those situations.  Autozone claims that it presents each employee with these sexual harassment policies and trains the employees thereon.  Plaintiffs principally argue that none of these provisions require termination for failure to report the type of behavior Quiney and Harper witnessed.

II.

Autozone now moves for summary judgment as to Quiney and Harper's claims of racial discrimination and retaliation.  The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The Supreme Court elaborated that the standard for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  According to this standard, the moving party bears the initial burden of "informing the district court of the basis of its motion" and "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may meet this burden by showing an absence of evidence to support an essential element of the nonmoving party's case for which the nonmoving party has the burden of proof.  *Id.*

Upon meeting this burden, the nonmoving party may only overcome summary judgment by showing that a genuine dispute exists, using specific facts that "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electrical Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court will now proceed to consider the substance of Autozone's motion.

5

III.

Quiney and Harper brought Counts for racial discrimination and retaliation based on a number of discrete claims for adverse employment actions taken by Autozone.  As an initial matter, Autozone requests that the Court dismiss three types of these claims as outside the pleadings.  The Court agrees that dismissal is appropriate as to the claims based on the issuance of the CARs against Quiney and Harper and the allegedly negative employment reference Autozone employees gave of Harper.[2]

The third type of claim based on the failure to promote either Quiney or Harper to Store Manager warrants further discussion.  The issues relating to these claims are relatively complicated because Plaintiffs bring the claims under both the KCRA and Title VII, and federal and state law apply somewhat differently to each claim.  The Court will first discuss the federal claims and then the state claims.

A.

Autozone first argues that the Court must dismiss the Title VII failure to promote claims, because Quiney and Harper failed to incorporate these claims in their EEOC charges.  A plaintiff must exhaust administrative remedies prior to bringing suit for employment discrimination by

---

[2]      The Court is unsure whether Plaintiffs are making these claims at all.  Although Plaintiffs do mention in their opposition to the summary judgment motion that Autozone handed down the CARs in retaliation for Quiney's complaint to DeHaan as to his inappropriate behavior towards Perry and Harper's complaint to Helstern as to DeHaan's long lunch breaks and failure to return to work after lunch, Plaintiffs do not actually make an argument in support of these purported claims.  Plaintiffs make no meaningful response to Autozone's contention that these claims are not cognizable under the Complaint and in these circumstances.  The express arguments related in Autozone's motion for summary judgment presented Plaintiffs with reasonable notice to bring forth such evidence.

Moreover, the Court notes that Plaintiffs' allegations are likely insufficient to maintain these claims. Complaints to superiors criticizing the work performance of another are not protected activities, *see Longs v. Ford Motor Co.*, 647 F. Supp. 2d 919 (W.D. Tenn. 2009) (holding that internal complaints of general discrimination did not refer to a specific protected class or create an inference of such a reference, and thus were not protected activities), and Plaintiffs have presented insufficient evidence to show that Autozone made any negative reference or that the reference resulted from Harper's engagement in a protected activity.  *See Ostermyer v. Toledo Clinic, Inc.*, 2005 WL 927120, *4 (N.D. Ohio Apr. 18, 2005) (holding that summary judgment must be granted where the plaintiff presented no evidence that the employer provided a negative reference).  Accordingly, the Court will dismiss these claims.

filing a charge based on that claim with the EEOC. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002). The "EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)). Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel*, 302 F.3d at 380 (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)). Quiney and Harper's EEOC charge stated general claims for racial discrimination and retaliation, and all specific recitations of facts related exclusively to events concerning the Investigation and their subsequent terminations. Plaintiffs mentioned only termination as a possible adverse employment action.

Even if read liberally, Plaintiffs failed to assert particulars in the EEOC charge that would prompt an investigation into the failure to promote; the scope of the investigation reasonably expected to extend from the EEOC charge would not encompass Plaintiffs' promotion claims. *See Adamov v. U.S. Bank Nat'l Ass'n*, 776 F. Supp. 2d 447, 451 (W.D. Ky. 2011). Accordingly, the Court must dismiss the Title VII failure to promote claims.

B.

The Court will next discuss the state law claims. Autozone argues that Plaintiffs' failure to promote claims must fail under Kentucky law as well, because Plaintiffs did not allege these claims in the Complaint. The Court finds that the facts as alleged in the racial discrimination Count of the Complaint would include claims for failure to promote, but the retaliation Count

does not present sufficient allegations to support such claims. Therefore, Plaintiffs cannot base their retaliation claims on the failure to promote.

Finally, as to the remaining state racial discrimination claims, Autozone contends that the Court should dismiss the failure to promote claims due to the absence of a prima facie case. Kentucky law adopted the Sixth Circuit's approach to failure to promote claims. *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) (quoting *Brown v. Tenn.*, 693 F.2d 600, 603 (6th Cir. 1982)). To maintain a discriminatory failure to promote claim, the plaintiff must show that:

> she belongs to a protected group, that she was qualified for and applied for a promotion, that she was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied.

*Brown*, 693 F.2d at 603 (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)). Quiney and Harper contend that Autozone should have promoted them to Store Manager, but instead hired DeHaan for that position. Because DeHaan is mixed-race, Autozone argues that Plaintiffs fail the fourth element of the prima face case, requiring other employees who were *not* of the same protected group to be promoted in Plaintiffs' stead. Whether DeHaan is a member of a protected group for purposes of state law is not an easy question.

Harper declared that DeHaan, while biracial, appears to be African-American. Harper Depo., ECF No. 45-11. Autozone argues that DeHaan should be considered African-American under the law and should occupy the same protected class as Quiney and Harper. The parties do not cite and the Court is unable to find Kentucky case law explicitly stating whether mixed-race individuals are protected under the Kentucky Civil Rights Act ("KCRA"). However, the Court finds that language from some Kentucky case law suggests that Kentucky courts would agree that mixed-race individuals are protected under the KCRA to a certain extent. *See, e.g., Holsey*

8

*v. Commonwealth*, 2004 WL 2914750, *7 (Ky. Ct. App. Dec. 17, 2004).   Moreover, the Kentucky General Assembly enacted the KCRA "to safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability . . . ." KRS § 344.020(1)(b).   That the statute mentions both race and color indicates that the Kentucky General Assembly intended to protect people from discrimination based on certain apparent characteristics, *i.e.*, the tone of their skin, regardless of their ethnicity.

"Kentucky courts look to federal law in interpreting the Kentucky Civil Rights Act." *Woodrum v. Lane Bryant The Limited, Inc.*, 964 F. Supp. 243, 244 (W.D. Ky. 1997).   The Sixth Circuit appears to recognize that under Title VII, mixed-race individuals are protected.   *See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 993-95 (6th Cir. 1999) (holding that a Caucasian individual could state a claim to relief for discrimination against him on account of his biracial daughter); *see Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 574 (6th Cir. 2000) (analyzing *Tetro* as holding that "the plaintiff himself need not be a member of a recognized protected class; he need only allege that he was discriminated on the basis of his association with a member of a recognized protected class").   Other federal courts agree.   *See Moore v. Dolgencorp, Inc.*, 2006 WL 2701058, *4 (W.D. Mich. Sept. 19, 2006) ("The court rejects plaintiff's claim that a light-skinned African-American of 'mixed-race' heritage is not entitled to protection as a member of this particular protected class."); *Smith v. Mission Assocs. Ltd. P'ship*, 225 F. Supp. 2d 1293, 1299 (D. Kan. 2002) ("Plaintiffs have all established that they are members of a protected class.   Larry and Duane McFadden are both biracial, being half black and half caucasian.").

Accordingly, the Court finds that the KCRA protects mixed-race individuals insofar as that individual visually appears to belong to a protected class.  The Court recognizes that such a holding could prove difficult to apply in a society increasingly populated by multiracial individuals, which in turn may inhibit the ability to perceive another's ethnicity or race.  *See* Trina Jones, *Shades of Brown: The Law of Skin Color*, 49 DUKE L.J. 1487, 1551-55 (April 2000). Nevertheless, the Court is satisfied that Kentucky courts would protect a mixed-race individual in the present situation, given that Harper admits that the individual appears to be African-American.  Therefore, Plaintiffs cannot establish a prima facie case for discriminatory failure to promote, because DeHaan occupies the same protected class as Quiney and Harper.

IV.

Plaintiffs bring a racial discrimination Count under both Title VII and the KCRA, which courts interpret using the same standards.  *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) ("Because Ky. Rev. St. Chapter 344 mirrors Title VII of the Civil Rights Act of 1964, we use the federal standards for evaluating race discrimination claims.").  Absent direct evidence of discrimination, the Sixth Circuit and Kentucky have adopted the *McDonnell Douglas* burden shifting scheme to determine whether a discrimination claim should be submitted to a jury based on circumstantial evidence.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).  According to this framework, the plaintiff bears the initial burden of proving a prima facie case for race discrimination.  *White*, 533 F.3d at 391.  Once accomplished, the burden shifts to the defendant to provide legitimate, nondiscriminatory reasons for the adverse employment action.  *Id.*  If the defendant is successful in this regard, the burden shifts back to the plaintiff to show that the

defendant's asserted nondiscriminatory reasons were mere pretext for discrimination. *Id.* The Court will proceed under this analytical framework.

A prima facie case for racial discrimination in the employment context requires the plaintiff to prove the following: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Id.* Autozone does not appear to contest that Plaintiffs satisfy the first two elements. As to the final two elements, the parties harbor serious disagreement.

## A.

Plaintiffs assert that a number of Autozone's actions constitute adverse employment decisions sufficient to support a prima facie case of racial discrimination. The Court will first address the claims for which Plaintiffs have failed to establish a prima facie case.

### i.

Plaintiffs first claim that Autozone's decision to only interview African-Americans during the Investigation was an adverse employment decision. An adverse employment action is "a materially adverse change in the terms and conditions of [the plaintiff's] employment," *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999), and generally involves material changes in employment status such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Deciding to interview African-Americans in the Investigation did not involve a material change in employment status. That Autozone eventually terminated Quiney and Harper as a result of some comments elicited during

11

the interview is inapposite to this claim, which focuses solely on the decision to interview only African-Americans.

Moreover, the Court finds that Plaintiffs could not show that Autozone treated Plaintiffs differently than similarly situated non-protected employees involving the Investigation.  Perry named only three witnesses to the sexual harassment she allegedly endured, all three of which were African-American.   After interviewing the three named witnesses, Brandenburg interviewed DeHaan, who admitted to some degree of the inappropriate behavior.  Autozone had no need to further investigate the problem or interview other witnesses.  Accordingly, Plaintiffs fail to point to disparate treatment relative to similarly situated non-protected employees in support of their prima facie case.

ii.

Quiney next claims that Helstern, the Regional Manager, showed favoritism towards Caucasian employees and DeHaan, in that he spent more time with and spoke only to them. Plaintiffs have not presented sufficient evidence supporting the fact that Helstern favored his white employees or DeHaan.  Even so, spending more time with and speaking more frequently to certain employees does not constitute an adverse employment decision as such.  *See Sands v. Jackson State Cmty. Coll.*, 2006 WL 1174469, *5 (W.D. Tenn. Apr. 29, 2006) ("Plaintiff's 'workplace dissatisfactions' with the perceived favoritism shown toward [another employee are] not actionable under Title VII.").  Plaintiffs fail to present evidence that Helstern's favoritism towards other employees affected their employment in any material way.  According to the definition of adverse employment action, Quiney fails to establish a prima facie case for this claim.

iii.

Plaintiffs further contend that Autozone's decisions to transfer both Quiney and Harper to the Broadway Store were adverse employment actions.  However, a decision to transfer ordinarily does not constitute an adverse employment action where the reassignment does not result in any loss in prestige or pay, unless such a transfer constituted a constructive discharge. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996); *Darnell v. Campbell Cnty. Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), *aff'd*, 924 F.2d 1057 (6th Cir. 1991) ("The clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.'").

Quiney and Harper were both Assistant Managers at other Autozone stores in the Louisville area prior to their transfers to the Broadway Store.  They continued to serve as Assistant Managers at the Broadway Store upon their initial arrival.  Plaintiffs present no evidence that the transfer to the Broadway Store brought about a reduction in pay or benefits.  In fact, both indicated they anticipated further promotion after the transfer.  Plaintiffs fail to argue that the transfer to the Broadway Store amounted to constructive discharge.  Accordingly, the transfer to the Broadway Store did not constitute an adverse employment action, so these claims must fail.

iv.

Harper brings two individual claims of racial discrimination.  First, Harper claims that Helstern's denial of Harper's request for a transfer out of the Broadway Store was an adverse employment decision.  A decision to deny a lateral transfer to another store is not, in most circumstances, an adverse employment action.  *See, e.g.*, *Love v. Electric Power Bd. of Chattanooga, EPB*, 392 F. App'x 405, 408 (6th Cir. 2010) (holding that the employer's failure to

grant the plaintiff's request for transfer did not amount to an adverse employment decision). This is because a lateral transfer wherein job responsibilities and pay rate remain the same does not constitute a material change in employment. Plaintiffs have provided no evidence to support a contrary conclusion. As such, the refusal to transfer Harper from the Broadway Store cannot support a racial discrimination claim.

Second, Harper contends that his demotion from Assistant Manager to Parts Sales Manager amounts to an adverse employment action. While demotions can certainly constitute an adverse employment action, *see, e.g.*, *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 302-03 (6th Cir. 2012), this claim fails the fourth prong of the prima facie case for racial discrimination requiring either replacement by a person outside the protected class or treatment different from similarly situated, non-protected employees. Here, Helstern made the decision to demote Harper because the Broadway Store unnecessarily had two assistant managers. While no one technically replaced Harper in the sense that his demotion left an employment position to be filled by a new employee, the person assuming his job responsibilities was Quiney, who was a member of Harper's protected class. Harper presented no evidence of other non-protected employees being treated differently. The record bears no evidence that any other Autozone store unnecessarily employed two assistant managers. Accordingly, this claim must fail.

B.

Finally, Plaintiffs jointly contend that their terminations were adverse employment actions evidencing racial discrimination. On this claim that the Court does find Plaintiffs have established a prima facie case of racial discrimination. A termination from employment is the classic example of an adverse employment decision, and Autozone seems to concede that it

14

replaced Plaintiffs with Caucasian employees.   Thus, Plaintiffs have satisfied their burden to prove a prima facie case for racial discrimination.

The burden now shifts to Autozone to establish legitimate, nondiscriminatory reasons for Plaintiffs' terminations.  Autozone adamantly contends that it fired Quiney and Harper for their failure to report instances of purported sexual harassment, a reason unaffected by Quiney and Harper's race or color.  Autozone reiterates this justification in Quiney and Harper's termination notices, testimony during the hearing before the Kentucky Unemployment Commission, and depositions taken pursuant to this litigation.   The Court finds that Autozone has presented nondiscriminatory reasons for terminating Quiney and Harper, shifting the burden back to Plaintiffs to show pretext.

The Sixth Circuit has

> identified three ways in which a plaintiff may rebut a defendant's legitimate, nondiscriminatory reason and demonstrate pretext.  The plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008).  Plaintiffs' ultimate burden here is to produce "sufficient evidence from which the jury could 'reasonably reject [the defendant's] explanation' and infer that the defendant[] 'intentionally discriminated' against him." *Braithewaite v. Timken, Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246 (6th Cir. 1997)).

For the following reasons, the Court finds that Plaintiffs have shown evidence of pretext sufficient to submit this claim to a jury.  First, according to Autozone, Plaintiffs violated a zero tolerance policy for reporting sexual harassment.  However, it is unclear whether such a policy in fact existed.  Autozone cites various internal literature that suggests some reporting and requires

15

others, but Autozone does not make explicit that low-level managers such as Quiney and Harper must report every instance of potential sexual harassment or face the penalty of termination. Plaintiffs have shown a genuine issue of material fact as to whether this specific zero tolerance policy existed, and the Court finds that a reasonable juror could find an absence of such a policy. In such a situation, firing Quiney and Harper based on a nonexistent policy would likely be pretextual, because the reasons proffered for termination were not the actual reasons for the termination.

Second, the Court questions whether, even if such a policy exists, the failure to report various instances of purported sexual harassment are sufficient to warrant termination. To begin, identifying sexual harassment is inherently subjective. Playful interaction to one individual may constitute unwanted and unwelcome touching to another. A single, isolated event may seem unimportant to some and feel wholly derogatory to others. Autozone's policy, as written and explained, seems to provide a bit of discretion as to whether reporting is required, because of the ambiguous nature of sexual harassment. Of course, as Autozone contends, some behavior is objectively and patently offensive enough to constitute sexual harassment to reasonable observers.

In the present situation, however, placing the onerous task of reporting any perceived slight inappropriateness on low-level managers seems unwarranted. And certainly firing someone on that ground appears baseless and unfair. A reasonable juror could find that the specific incidents witnessed by Quiney and Harper, isolated and over a three-week span, did not amount to sexual harassment, such that firing them for the failure to report the incidents is an insufficient reason for that employment decision.[3]   Accordingly, the Court finds a genuine question of fact as to whether Quiney and Harper witnessed sexual harassment at all, triggering

---

[3] Of course, a jury could conclude otherwise.

the alleged zero tolerance reporting policy, and whether the failure to report those incidents was sufficient to justify termination.  If they did not witness obvious acts of sexual harassment, the reason for firing Plaintiffs could again be pretextual.

In sum, Plaintiffs have presented a valid case for racial discrimination based on their terminations, and the Court will deny Autozone's motion for summary judgment as to this claim.

## C.

Plaintiffs bring racial discrimination claims under both single-motive and mixed-motive theories of liability.  *Spees v. James Marine, Inc.*, 617 F.3d 380, 390 (6th Cir. 2010) (finding that a plaintiff can trigger a mixed-motive analysis by giving notice of bringing such claims).  The single-motive theory of liability is analyzed above, and because the Court found that racial discrimination based on Plaintiffs' terminations satisfied Plaintiffs' burdens of proof upon summary judgment on a single-motive theory, the Court need not examine that claim under the mixed-motive framework.

The Sixth Circuit has determined that the *McDonnell Douglas* burden shifting scheme does not apply to a mixed-motive claim.[4]  *White*, 533 F.3d at 400.  The Sixth Circuit succinctly explained the mixed-motive theory as follows:

> [T]o survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was *a* motivating factor for the defendant's adverse employment action. This burden of producing some evidence in support of a mixed-motive claim is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim.

*Id.* (internal citations omitted)

---

[4] Plaintiffs only assert their mixed-motive claim under the federal law, as evidenced in their response to the motion for summary judgment.  Accordingly, the Court will not analyze the mixed-motive analysis as prescribed under Kentucky law, which is different from that under federal law.  *See Alexander v. Univ. of Ky.*, 2012 WL 1068764, *15 (E.D. Ky. Mar. 28, 2012) ("Importantly, however, Kentucky treats its mixed-motive formulation as distinct from that of *Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148 (2003).").

> This lenient summary judgment standard is counterbalanced by potential restrictions on a plaintiff's recovery for a mixed-motive claim.  Under a mixed-motive theory of discrimination, [the plaintiff] can only recover declaratory relief, injunctive relief, and attorney's fees and costs directly attributable to the mixed-motive claim.

*Megivern v. Glacier Hills Inc.*, 2013 WL 2097373, *16 (6th Cir. May 16, 2013) (citing 42 U.S.C. § 2000e–5(g)(2)(B)) (internal citation omitted).  Plaintiffs cannot establish the first element of a mixed-motive claim as to most of their claims, because, as discussed above, Plaintiffs fail to allege an adverse employment action for each of the discrimination claims except for Harper's demotion.  The Court will limit its federal mixed-motive analysis to that particular claim.

While Harper's duty to produce some evidence showing that his race was a motivating factor in his demotion is not onerous, it requires enough "evidence from which a jury could reasonably infer that [Harper's] race was a motivating factor in the [demotion]."  *White*, 533 F.3d at 404.  In Plaintiffs' lengthy brief in opposition to this motion, and in the course of Harper's deposition, the Court finds no evidentiary support of even a partial racial animus in pursuing Harper's demotion.  Plaintiffs, in their response, allege that Helstern demoted Harper because the Broadway Store had two African-American Assistant Managers, ECF No. 54, but the Court is not inclined to accept such conclusory allegations without sufficient support.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2006) (holding that plaintiff's unsupported, conclusory remarks are insufficient to support a mixed-motive claim for discrimination).  Here, that support is lacking.  In fact, the Court gathers from Harper's deposition that he believed his demotion was simply the result of having two assistant managers at one store, which was

apparently against company policy.[5]  Plaintiffs' mixed-motive claim for racial discrimination based on Harper's demotion thus fails under Title VII.

V.

Finally, the Court considers Plaintiffs' retaliation claims, which are based on their opposition to DeHaan's sexual harassment of Perry.  Federal law "prohibits an employer from retaliating against an employee who has 'opposed' any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an employee who has 'participated' in any manner in an investigation under Title VII."  *Johnson*, 215 F.3d at 578. Kentucky courts interpret retaliation law under the KCRA consistent with the interpretation of unlawful retaliation under Title VII.  *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 801-02 (Ky. 2004).  The Sixth Circuit and Kentucky have adopted the *McDonnell Douglas* burden shifting scheme to evaluate retaliation claims.  *Id.*; *Johnson*, 215 F.3d at 578.

Plaintiff must show the following to establish a prima facie case for retaliation: "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  Though Autozone appears to concede that Plaintiffs have established a prima facie case for retaliation, the Court is not so sure.

The Court submits that Plaintiffs have established the first three elements.  Assuming that participating in the Investigation is a protected activity, Autozone, the sponsor of the

---

[5]  The Court recognizes that Harper has alleged or presented some evidence suggesting that Helstern and other Autozone employees may have harbored some discriminatory views and exhibited discriminatory behavior, such as telling African-Americans they are a good fit for a store located in a high-crime rate area with a majority African-American customer base.  However, Harper does not connect this evidence to his demotion.

Investigation, was aware of the protected activity and Plaintiffs suffered termination.  However, the Court takes issue with the causation element.

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not [engaged in the protected activity]."  *Id.*  Quite literally, Autozone would not have terminated Plaintiffs had it not discovered that Plaintiffs witnessed some admittedly inappropriate behavior during the Investigation.  However, something more than mere sequential causation is required.  Autozone fired Plaintiffs, lawfully or not, for failing to report the alleged sexual harassment, not for actually participating in the Investigation.  The cause of their firing was largely independent of their participation in the Investigation, except that the Investigation provided the context for admission of the failures to report.

The Court is confounded by Autozone's retaliation claim.  Autozone initiated, sponsored, and carried out the Investigation.  At the culmination of the Investigation, Autozone fired the person investigated.  Essentially, then, Plaintiffs argue that Autozone fired them for assisting in Autozone's opposition to sexual harassment.  The classic case of retaliation is just the opposite.  Typically, the plaintiff opposes some action or policy of the employer, and the employer terminates or demotes the employee in reaction to that opposition.  Here, Plaintiffs attempt to transform the retaliation claim to fit a situation where the plaintiffs in fact comply with the employer's protected activities.  This is simply not a cognizable claim under federal or state retaliation law.  Accordingly, Plaintiffs' retaliation claims fail.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants Autozone Stores, Inc., Autozone Development Corp., Autozone Texas, L.P., and Autozone, Inc. are DISMISSED.

IT IS FURTHER ORDERED that Defendant AutoZoners, LLC's motion for summary judgment as to any claims concerning Autozone's issuance of the July 2010 Corrective Action Reviews against Quiney and Harper, alleged negative employment reference of Harper, and Autozone's failure to promote Quiney and Harper is SUSTAINED, and these claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant AutoZoners, LLC's motion for summary judgment as to Plaintiffs' racial discrimination claim based on Plaintiffs' terminations is DENIED.

IT IS FURTHER ORDERED that Defendant AutoZoners, LLC's motion for summary judgment as to Plaintiffs' other racial discrimination claims and Plaintiffs' claims for retaliation is SUSTAINED and those claims are DISMISSED WITH PREJUDICE.

cc:    Counsel of Record