UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11CV-403-H

SHANA PERRY, et al.                                             PLAINTIFFS

V.

AUTOZONE STORES, INC., et al.                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

After extensive litigation, trial, and entry of judgment against it, Defendant AutoZone has filed post-trial motions requesting judgment in its favor, a new trial, or remittitur. The Court has previously considered some of these issues at great length in prior memorandum opinions and on the trial record. With regard to these issues, the Court will not elaborate much further here. The Court will address all other issues more comprehensively. Plaintiffs have also moved for their attorney's fees and costs.

I.

This litigation has been fiercely contested from the outset. It involves multiple claims by three separate Plaintiffs, former AutoZone employees, arising from an overlapping series of workplace events. The claims and the surrounding circumstances create a complicated picture. Prior to trial, the Court considered numerous dispositive motions on various issues. In the process, the Court held numerous conferences to hear argument of counsel.

The claims arise from the following alleged events: Shana Perry was sexually harassed by AutoZone Store Manager Mark DeHaan; Daryl Quiney and Damon Harper participated in AutoZone's investigation of Perry's complaint by reporting what they had witnessed; DeHaan,

Quiney, and Harper were terminated; after DeHaan's termination, Perry suffered retaliatory harassment from AutoZone District Manager Donnie Helstern.

On June 4, 2013, the Court dismissed the claims of Quiney and Harper for racial discrimination arising from a July 2010 Corrective Action, negative employment references, and failure to promote. The Court denied summary judgment as to their claims for racially discriminatory termination. In addition, the Court dismissed the remainder of Quiney and Harper's claims, including claims for retaliatory termination for participating in the investigation of Perry's sexual harassment claim against Store Manager Mark DeHaan.

Two weeks later, the Court dismissed Perry's claims for disparate pay under Title VII, quid pro quo sexual harassment, and retaliatory constructive discharge. The Court allowed Perry to proceed on her claims for disparate pay under the Kentucky Civil Rights Act (KCRA), sexually hostile work environment under the KCRA and Title VII, and retaliatory hostile work environment under the KCRA and Title VII. Eventually, the jury would return a favorable verdict on these last two claims.

The Court also reconsidered and reinstated Harper's and Quiney's claims for retaliatory termination. In reaching these decisions, the Court noted that "the highly unusual and even bizarre circumstances of this case contribute to the Court's difficulty in concluding a definitive analysis." Ultimately, the jury would return a favorable verdict on this claim for both Quiney and Harper.

Prior to trial, the Court heard argument on various evidentiary issues. On September 20 and October 8, the Court entered orders on those issues and also denied Plaintiffs' motion to bifurcate trial. On October 9, the Court reconsidered and denied Defendant's motion to dismiss Quiney's and Harper's racial discrimination claims.

The trial on the remaining issues commenced on October 15 and involved six days of testimony. Prior to sending the case to the jury, the Court directed a verdict against Quiney and Harper on their racial discriminatory termination and punitive damage claims, and against Perry on her punitive damage claim tied to her disparate pay claim.

On October 23, the jury returned a verdict for Perry on both her sexual harassment and retaliatory harassment claims, awarding $150,000 in compensatory damages for emotional distress and $400,000 in punitive damages; for Quiney on his retaliatory discharge claim, awarding $23,300 for economic loss and $100,000 for emotional distress; and for Harper on the same claim, awarding $60,000 for economic loss and $100,000 for emotional distress. It is from these verdicts that Defendant moves for relief.

II.

Judgment as a matter of law is appropriate under Fed. R. Civ. P. 50 in rare instances— only when there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." Fed. R. Civ. P. 50(a). The Court will consider the entire trial record. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150 (2000). It must "draw all reasonable inferences in favor of the prevailing party, and it may not make any credibility determinations or weigh the evidence." *Id.* "District courts should grant judgment as a matter of law only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Karam v. Sagemark Consulting, Inc*., 383 F.3d 421, 427 (6th Cir. 2004) (quoting *LaPerriere v. Int'l Union UAW*, 348 F.3d 127, 132 (6th Cir. 2003)).

A new trial is warranted when "a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being

excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045−46 (6th Cir. 1996).

Finally, remittitur is appropriate only if a jury's damage award is "beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004) (quoting *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990)) (internal quotation marks omitted). The Court may remit if after reviewing the evidence in favor to the nonmoving party, "the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the conscience of the court." *Am. Trim, L.L.C.*, 383 F.3d at 475 (citing *Farber*, 917 F.2d at 1395).

The Court will consider each of the issues Defendant has raised in turn.

## III.

The Court will first address Defendant's motion for statutory remittitur as to Perry's damages pursuant to 42 U.S.C. § 1981(b)(3)(D). The difficulty with this otherwise straightforward issue arises due to the jury verdict in favor of Perry that is equally applicable to her federal and state claims.

Under Section 1981a(b)(3)(D), because AutoZone has 500 or more employees, non-economic damages recoverable under Title VII are capped at $300,000 per claimant per action. The cap is per claimant, not per claim. *Hudson v. Reno*, 130 F.3d 1193, 1200 (6th Cir. 1997) *abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001); *Fogg v. Ashcroft*, 254 F.3d 103, 108 (D.C. Cir. 2001). This limit is imposed on the sum of compensatory and punitive damages. *See White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d

789, 806 (6th Cir. 2004) *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Therefore, Perry's maximum recovery under Title VII is $300,000.

However, Perry also sued under the KCRA. As is always the case, at trial, the Court did not instruct the jury separately on Perry's state and federal hostile work environment claims because the instructions would have been the same. The difference between Title VII claims and KCRA claims lies in the available recovery. For discrimination claims brought under the KCRA, compensatory damages are not capped, but no punitive damages are available. *See Kentucky Dept. of Corrections v. McCullough*, 123 S.W.3d 130, 133 (Ky. 2003). Therefore, Perry's maximum recovery under the KCRA is $150,000.

The remaining question is how to accommodate Perry's recovery under the two statutes. Perry argues that she should be deemed to have received her $150,000 in compensatory damages under the KCRA and $300,000 in punitive damages under Title VII, for a total of $450,000. The Sixth Circuit has not directly discussed this issue,[1] but all the circuits addressing similar circumstances agree with Perry.

The First Circuit set forth a good explanation of the generally accepted view that courts have an obligation to respect jury verdicts. It explained:

> [W]here the jury makes an unapportioned award, there is no basis for believing that the jury favored applying the damages to the federal over the state claim . . . . [T]he most plausible reading of the jury's verdict in such circumstances is that the jury wanted the specified sum awarded to the plaintiff no matter the count to which the award was eventually assigned. Allocating damages in this fashion is thus consistent with the district court's general obligation to preserve lawful jury awards to the extent possible.

---

[1] The Sixth Circuit did recently affirm a Western District of Kentucky decision that involved this issue. In *W. v. Tyson Foods, Inc.*, a plaintiff brought claims for sexual harassment and constructive discharge under Title VII and the KCRA. 2008 WL 5110957 (W.D. Ky. Dec. 3, 2008), *aff'd* 374 Fed. App'x 624 (6th Cir. 2010). The jury found for plaintiff but was not required the state under which body of law it was awarding damages. The jury awarded plaintiff $750,000 in compensatory damages, a sum of money for front and back pay, and $400,000 in punitive damages. The district court capped the punitive damages at $300,000 to comply with Title VII and awarded plaintiff the compensatory damages under the KCRA. While the Sixth Circuit panel affirmed the district court's actions, it did not discuss our particular issues.

*Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 66 (1st Cir. 2005) (district court properly allocated compensatory damages to the Commonwealth claim and punitive damages to the federal claim). In addition, Title VII, by its very text, was not intended to limit state recovery for discrimination.

The other appeals courts that have considered the issue of apportionment of damages for parallel claims all appear to be in general agreement. *See Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570–71 (3d Cir. 2002) (district court properly allocated compensatory damages to the state claim and punitive damages to the federal claim); *Passantino v. Johnson & Johnson*, 212 F.3d 493, 509–10 (9th Cir. 2000) (same). *See also Hall v. Consol. Freightways Corp.*, 337 F.3d 669, 678–79 (6th Cir. 2003) (district court could apply the Title VII cap to the punitive damage award and allocate all remaining punitive damages and compensatory damages to the state claim); *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1349–50 (D.C. Cir. 1999) (same). That is, the Court should "consider[] the unspecified award as fungible between the state and federal claims and allocate[] the award so as to maximize the plaintiff's recovery while adhering to the Title VII cap." *Rodriguez-Torres*, 399 F.3d at 66.

In some ways this result is counterintuitive because the highest amount of either separate verdict is $300,000. However, there is no particular rationale for applying the federal cap first against the compensatory damages, thus leaving only $150,000 for punitive damages. This result here also does not fulfill the precise purposes of the two statutes: to limit jury awards in particular ways. On the other hand, the principle that a plaintiff is entitled to their best result consistent with the statutes is equally valid. Further, the result here does not offend the principle to avoid a double recovery.

For these reasons, the Court will follow the weight of authority on this issue and respect the jury verdict to the fullest extent possible. The Court will remit Perry's punitive damage award to $300,000 by operation of law to comply with the Title VII statutory cap. Thus, Perry can recover $150,000 under the KCRA and $300,000 under Title VII, for a total of $450,000.

IV.

Defendant argues that the evidence at trial was insufficient to support Perry's sexually hostile work environment and retaliatory hostile work environment claims. The Court considered these issues at the summary judgment stage in its Memorandum Opinion dated June 18, 2013, and again at the close of trial. Whether the evidence presented was sufficient to sustain a finding in favor of Perry on her claims was a fairly close call then, as it is now. However, the trial testimony did not change the Court's view. Perry's counsel has set forth a fair summary of the evidence which supports the level upon which a reasonable jury could and did find severe and pervasive conduct on each claim.

A.

To prevail in a sexual harassment suit under Title VII and the KCRA, Perry had to show that (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual conduct, (3) the conduct was based on her sex, and (4) the conduct created a sexually hostile work environment.

Defendant argues only that the evidence did not support a finding of the conduct's requisite severity or pervasiveness. To advance its argument, Defendant contends that Perry was exposed to unwelcome conduct for approximately fifteen days out of Perry's twelve years of employment. However, evidence in the trial record tended to indicate that Perry suffered frequent sexual harassment across a period of nearly a month and a half. Next, Defendant quotes

from one of the instances in which Perry reported her sexual harassment to the AutoZone Human Resources manager in order to contend that things had not yet "blown up." The Court seriously doubts the significance of these words and finds that the evidence, including Perry's complaints of sexual harassment to AutoZone, Perry's lengthy trial testimony, the testimony of trial witnesses, and other evidence, reasonably supports the jury's ultimate conclusion that the conduct Perry suffered was sufficiently severe and pervasive.

The fact that Defendant found its own employee's conduct particularly egregious, so much so that it claims Quiney and Harper should have reported it earlier than they did, made Perry's case even stronger. With regard to both of Perry's claims, Defendant was hurt by the inconsistency of its own actions and arguments, as well as by the unbelievability of their witnesses. There was sufficient evidence for the jury to conclude that the sexual harassment Perry suffered was severe and pervasive enough to give rise to a hostile work environment.

B.

To prevail in a retaliatory harassment suit under Title VII and the KCRA, Perry had to show that (1) she engaged in a protected activity (she reported the sexual harassment), (2) AutoZone was aware that she engaged in the protected activity, (3) she was subjected to severe or pervasive retaliatory conduct by the specified AutoZone employees—Helstern and/or DeHaan, and (4) there was a causal connection between the protected activity and the harassment. Defendant advances two separate arguments.

First, Defendant argues that the evidence did not support a finding of the conduct's requisite severity or pervasiveness. The jury could reasonably conclude that Store Manager Mark DeHaan and District Manager Donnie Helstern had the requisite knowledge of Perry's sexual harassment complaint. Plaintiffs' briefs fairly represent all of the instances of harassment

that the jury could reasonably conclude Perry suffered—a list that spans three, single-spaced pages. Construing the evidence and drawing reasonable inferences in favor of Perry, the Court concludes that judgment as a matter of law is not appropriate.

Defendant further argues that Perry failed to establish that her sexual harassment complaint was the but-for cause of her subsequent retaliatory harassment because its witnesses testified to being treated similarly by Helstern and because Helstern never mentioned DeHaan's name. However, the jury was entitled to disbelieve Defendant's witnesses, and naming the harasser is not a prerequisite to granting relief. Again, Defendant was hurt by the inconsistency of its own actions and arguments, as well as by the unbelievability of their witnesses. Defendant's characterization of the evidence as "speculation and conjecture" is inaccurate. The jury was presented with sufficient evidence, in addition to close temporal proximity, to infer that Perry's protected activity was the but-for cause of the retaliatory harassment.

C.

Defendant next returns to its argument that Perry's two claims fail because Defendant established the *Faragher/Ellerth* defense. The Court discussed this issue at length in its June 18 Memorandum Opinion and concluded that Defendant was not entitled to the defense as a matter of law. The Court gave reasonable instructions that allowed the jury to consider the defense on the evidence. The defense was a difficult one, and Defendant failed to convince the jury. The Court has nothing further to add.

Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that a reasonable jury could and did find in favor of Perry on her sexual and retaliatory harassment claims, and the result was not "seriously erroneous."

V.

Next, Defendant argues that the jury awards to Perry for emotional distress and punitive damages were excessive and based upon insufficient evidence. As previously described, Perry's punitive damage award has been remitted from $400,000 to $300,000.

Once again, Plaintiff's counsel has fairly and adequately summarized the evidence supporting both the damages for emotional distress and punitive damages. The only close question would have been the original verdict of $400,000 in punitive damages, being over two and a half times the emotional distress award. The Court determines whether a punitive damage award is proper under the three-part inquiry set forth in *Parker v. General Extrusions, Inc.*. 491 F.3d 596, 602−03 (6th Cir. 2007) (citing *Kolstad v. American Dental Assoc.*, 527 U.S. 526 (1999)). Both sides had an opportunity to present evidence of the three factors. In the Court's view, Defendant's witnesses were not credible for a variety of reasons. And, Defendant's own managers were the chief offenders.

Regardless, the statutory remittitur returns the award to an unquestionably reasonable amount—a ratio to the compensatory damage award of 2:1. In fact, both parties cite the same case for the proposition that a ratio in the range of 1:1 to 2:1 is constitutionally permissible. *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 487 (6th Cir. 2007); *see also Pollard*, 412 F.3d at 666−68 (affirming a punitive damages award with a ratio to compensatory damages of 2:1).

VI.

Defendant argues that a number of the Court's jury instructions were improper as a matter of law. Upon review, the Court believes that its instructions were proper for the reasons stated on the record and as may be further elaborated here. Most of these issues were discussed

at length during the occasions when the Court provided successive drafts of its proposed instructions beginning on the second day of trial.

First, Defendant argues that the Court's instructions unfairly prejudice it by failing to instruct regarding corporate sympathy or bias. The corporate bias instruction is not required as a matter of law.

Second, Defendant argues that the Court's instructions were improper due to the absence of a particular sentence providing specific examples of what generally does not amount to sexual harassment. The Court understands that such an instruction is proper and permitted. However, Defendant has cited no authority that such a sentence is required as a matter of law and the Court does not believe that it is so. The Court similarly did not include specific examples of what generally *does* amount to sexual harassment.

Next, Defendant objects to the Court's instructions regarding the *Faragher/Ellerth* defense. Once again, the Court stands by its instructions. The Court placed no limitation on Defendant's closing argument. Whether the additional language Defendant requests would have been proper, the Court cannot say. However, it was not required.

Finally, Defendant has a number of objections to the manner of the Court's instructions as to punitive damages. The Court's punitive damage instruction appears to be a standard one in every respect. In fact, some of the language that Defendant quotes in its motion as requested language was actually included in the jury instructions.

With regard to Quiney and Harper's verdicts, Defendant again argues that the Court's instructions unfairly prejudice it by failing to instruct regarding corporate sympathy or bias, and as to mitigation of damages in employment. However, the corporate bias instruction is not

required as a matter of law and the Court did instruct that Plaintiffs were required to minimize their damages.

## VII.

Defendant's arguments as to Quiney's and Harper's verdicts are similar to those it advanced against Perry's verdict. It argues that the evidence does not support these Plaintiffs' retaliation claims. To establish retaliatory termination, each had to demonstrate that: (1) he engaged in a protected activity, *i.e.* participated in Perry's sexual harassment investigation; (2) AutoZone was aware of the protected activity; (3) AutoZone terminated him; and (4) there was a causal connection between the protected activity and the termination.

Defendants argue primarily that Plaintiffs failed to establish but-for causation, and Plaintiffs presented no evidence that their terminations were motivated by retaliatory animus. Again, Plaintiffs' counsel has fairly summarized the evidence. For the most part, much of Defendant's witnesses simply strained credibility. The idea that those who reported the harassment would receive the same punishment as those who perpetrated it was quite difficult to comprehend. The inconsistencies presented by Defendant at trial, combined with temporal proximity and other evidence, allowed the jury to reasonably find but-for causation and retaliatory animus.

## VIII.

Finally, Defendant argues that both Harper and Quiney's emotional distress damages were excessive and not based on the evidence. Furthermore, it claims that Harper's award of lost wages was excessive and that even Harper's maximum recovery must be mitigated because Harper made no reasonable effort to mitigate or reduce his damages.

The jury awarded both Harper and Quiney $100,000 in emotional damages. Such an award can be based on the plaintiffs' own testimony—no corroborating medical report is necessary. *See Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996). Harper and Quiney each testified in detail as to how the termination affected them. From this testimony, the jury could reasonably reach the $100,000 figure.

A reasonable jury could find that Harper did not fail to mitigate his damages. However, to the extent the jury awarded Harper more than $40,720 in economic damages, such an award is not supported by the evidence. This is the maximum amount of recovery provided by both parties' counsel. Plaintiff's suggestion that the difference could be due to Harper's potential promotions or raises is based on evidence that is speculative at best.

IX.

In view of all the foregoing conclusions, the Court now considers Plaintiff's motion for attorney's fees in the amount of $182,258.78 and costs in the amount of $10,898.38.

This was a difficult case in which Plaintiffs' counsel showed considerable skill and determination. To achieve success counsel risked a great deal with no certainty of a good result. Ultimately, Plaintiffs received verdicts totaling over $833,000, now reduced to about $710,000. Although Plaintiffs were not successful on all their claims, the overall result was extremely positive. Counsel's fee request represents approximately twenty-four percent of the recovery. Considering the time spent and the risk involved, this is a most reasonable request.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for statutory remittitur is SUSTAINED and Plaintiff Perry's verdict is reduced to $450,000.

IT IS FURTHER ORDERED that Harper's award of economic damages is reduced to $40,720.

IT IS FURTHER ORDERED that Defendant's remaining motions for judgment notwithstanding the verdict, for a new trial, and for remittitur are DENIED.

IT IS FURTHER ORDERED that Plaintiffs are awarded attorney's fees in the amount of $182,258.78 and costs in the amount of $10,898.38.

This is a final and appealable order.

cc:     Counsel of Record